JOURNAL ENTRY and OPINION
{¶ 1} In this consolidated appeal, defendants-appellants, Mukesh Desai, Shirishbha Patel, Ashok Patel, Eva Shepard, James J. Shepard, Manhar Shah, and Simon Zariffe (collectively referred to as "Appellants"), appeal their convictions for violating Strongsville City Ordinances 1454 et seq. ("S.C.O. 1454"). Finding merit to the appeal, we reverse and vacate their convictions.
 {¶ 2} In 2002, Officer Marianna Bonacci ("Bonacci") of the Strongsville Police Department conducted administrative searches of the motels which appellants owned and operated. The purpose of Bonacci's search was to inspect the motel occupancy records. Upon request, all but Manhar Shah voluntarily provided the records to Bonacci. After reviewing the records, Bonacci discovered that several guests had stayed beyond the 30-day limit allowed by the City's ordinance. As a result, the appellants were cited for violating S.C.O. 1454.13. Shah was cited under S.C.O. 1454.03 for his refusal to allow Bonacci to inspect the occupancy records.
 {¶ 3} Following their no contest pleas, the trial court found appellants guilty, imposed individual fines of $25, and placed them on one-year probation.[1]
 {¶ 4} Appellants appeal their convictions, raising five assignments of error. Finding the first and second assignments of error dispositive, we will address them first.
 Motion to Suppress {¶ 5} In their first and second assignments of error, the appellants argue that the trial court erred in denying their motions to suppress and to dismiss, which alleged that the administrative search scheme is constitutionally unreasonable.
 {¶ 6} When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706, 707 N.E.2d 539. We therefore consider whether the facts in the instant case demonstrate compliance with Strongsville's ordinances under a de novo standard of review. Resolution of this issue requires this court to examine the constitutionality of the ordinances.
 {¶ 7} In determining the constitutionality of an ordinance, we are mindful of the fundamental principle requiring courts to presume the constitutionality of lawfully enacted legislation. Arnold v. Cleveland
(1993), 67 Ohio St.3d 35, 38-39, 616 N.E.2d 163, Univ. Hts. v. O'Leary
(1981), 68 Ohio St.2d 130, 135, 429 N.E.2d 148; Hilton v. Toledo (1980),62 Ohio St.2d 394, 396, 405 N.E.2d 1047. Further, the legislation being challenged will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. Id. See, also, Hale v.Columbus (1990), 63 Ohio App.3d 368, 372, 578 N.E.2d 881, 883. {¶8} The Fourth Amendment of the United States Constitution and Section14, Article I of the Ohio Constitution protect against unreasonable searches and seizures. In general, warrantless searches are unreasonable and therefore invalid. Marshall v. Barlow's Inc. (1978), 436 U.S. 307, 312,56 L.Ed.2d 305, 98 S. Ct. 1816. This general rule is applicable to commercial premises as well as homes. Id. An owner or operator of a business thus has a reasonable expectation of privacy in commercial property. United States v. Burger (1987), 482 U.S. 691, 699,96 L. Ed. 2d 601, 107 S. Ct. 2636, citing Katz v. United States (1967),389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507. This expectation exists with respect to administrative inspections designed to enforce regulatory statutes. Burger, supra at 700, citing Marshall, supra at 312-313.
 {¶ 9} However, the United States Supreme Court has carved out an exception to the warrant requirement for "pervasively regulated businesses," and industries closely regulated and "long subject to close supervision and inspection." United States v. Biswell (1972), 406 U.S. 311,316, 32 L. Ed. 2d 87, 92 S. Ct. 1593, Colonnade Catering Corp. v.United States (1970), 397 U.S. 72, 77, 25 L. Ed. 2d 60, 90 S. Ct. 774. These industries have such a history of government oversight that no reasonable expectation of privacy could exist for such an owner or operator.Burger, supra at 700, citing Katz, supra at 351-352.
 {¶ 10} Because the owner or operator of a commercial premises in a "closely regulated" industry has a reduced expectation of privacy, the warrant and probable cause requirements of the Fourth Amendment have a lessened application in this context. Burger, supra at 702. "`Where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.'" State v. Grays, Cuyahoga App. No. 82410, 2003-Ohio-6889 at ¶ 11, quoting Burger, supra at 702.
 {¶ 11} This warrantless inspection, however, even in the context of a pervasively or closely regulated business, will be deemed reasonable so long as three criteria are met. Burger, supra 702. First, the regulatory scheme upon which the inspection is to be made must have a substantial governmental interest. Id. Second, the warrantless administrative search much be necessary to further the regulatory scheme. Id. Finally, the administrative scheme must "provide a constitutionally adequate substitute for the warrant." Burger, supra at 703, quoting Donovan v.Dewey (1981), 452 U.S. 594, 600, 69 L. Ed. 2d 262, 101 S.Ct. 2534.
"In other words, the regulatory statute must perform two basicfunctions of a warrant: it must advise the owner of the commercialpremises that the search is being made pursuant to the law and has aproperly defined scope, and it must limit the discretion of the inspectingofficers. * * * To perform this first function, the statute must be`sufficiently comprehensive and defined that the owner of the commercialproperty cannot help but be aware that his property will be subject toperiodic inspections undertaken for specific purposes.' * * * Inaddition, in defining how a statute limits the discretion of theinspectors, we have observed that it must be `carefully limited in time,place, and scope.'" (Citations omitted). Burger, supra at 703.
 {¶ 12} The business of keeping a motel is closely related to the health and welfare of the public and has long been regarded as affecting public interest. State v. The Norval Hotel Co. (1921), 103 Ohio St. 361,363, 133 N.E. 75.
 {¶ 13} In the instant case, the trial court found Strongsville's ordinance regulating motel administrative searches constitutional, because all three prongs of the Burger test were satisfied. The trial court found that the ordinance was "sufficiently limited as to time (hours the motel is open), place (the motel where the registry is kept), and scope (only the registry book itself)."
 {¶ 14} Although we agree with the trial court that the first two prongs of the Burger test are met, we disagree that the Strongsville regulatory scheme is "sufficiently limited in time" to satisfy the third prong of Burger.
 {¶ 15} S.C.O. 1454.03 requires that any person in charge of a motel shall keep a register containing the names and personal information of all guests who stay at the motel. This guest register "shall always be open for inspection * * *." In addition, S.C.O. 1454.13 provides that the person in charge of a motel may not allow any guest to occupy a unit for a period exceeding thirty days.
 {¶ 16} S.C.O. 1454.02 authorizes the right of entry for municipal officials to review the motel guest register. It provides:
"The Municipal official charged with the enforcement of this chapter,and his duly accredited inspectors, shall have the right, and areauthorized and directed to examine at any hour any lodging house, motelor tourist court in the Municipality for the purpose of investigating andexamining therein those conditions which are regulated by this chapter.No person shall refuse or cause to be refused to such official or hisduly accredited inspectors, admittance to any such lodging house, motelor tourist court in the performance of his or their duties under thischapter, or any other law, ordinance or regulation pertaining thereto."
 {¶ 17} The City argues that the warrantless search of the motel register was valid because it is a closely regulated business and because all but one of the appellants consented to the search. However, if the authorization scheme of inspection is unconstitutional, then the City had no authority to inspect the records, and any consent to inspect the records is irrelevant.
 {¶ 18} Whether an administrative regulatory search scheme is limited in time, place, and scope to satisfy the Burger test has been subject to judicial interpretation. The United States Supreme Court has held that a New York City law which authorized the warrantless search of junkyards, vehicle dismantling, and related businesses was properly limited in time when the law provided that the inspection could be conducted only "during regular and usual business hours." Burger, supra. See, also, Grays, supra and State v. Zinmeister (1985), 27 Ohio App.3d 313, 501 N.E.2d 59
(Cleveland ordinance allowing warrantless searches of public garages, junkyards, etc. was properly limited in time when the ordinance provided that inspections be conducted "at a time and in a manner so as to minimize any interference with, or delay of, business operations.")
 {¶ 19} However, the court in J.L. Spoons, Inc. v. City of Brunswick
(N.D.Ohio 1999), 49 F. Supp. 2d 1032, 1040, stated, albeit in dicta, that "at any time it is occupied or open for business" fails to satisfy the criteria for administrative searches set forth in Burger, so that it is "virtually limitless and fails to curb the discretion of inspectors in `time, place, and scope.'"
 {¶ 20} In State v. VFW Post 3562 (1988), 37 Ohio St.3d 310,525 N.E.2d 773, the Ohio Supreme Court reviewed the constitutionality of a statute and administrative code section authorizing warrantless administrative searches of liquor establishments. The Court recognized that the applicable statute contained no limit on the hours of administrative searches and thus placed no restraints on the discretion of the investigators. Id. at 314. In declaring the statute unconstitutional, the Court held that this failure to sufficiently limit the time and scope of the search rendered the warrantless search unreasonable. Id. at 314-315.
 {¶ 21} In King v. City of Tulsa (Okla. Cir. 1966), 415 P.2d 606, the court reviewed a situation closely analogous to the instant case. The court held that it was a proper use of police power to establish an ordinance requiring all businesses operating as a hotel to keep a guest register. The Tulsa ordinance further provided that the register was to be "at all times subject to inspection." Id. at 609. Finding the ordinance constitutional, the court noted:
"We can, however, visualize a situation wherein the inspection of thehotel guest register might be unreasonable, in view of the fact that theTulsa ordinance does not prescribe a specific period of time, duringwhich the guest register is subject to inspection. We think it would bebetter, if the ordinance specified a certain period of time during whichthe hotel and boarding house managers must maintain the guest registerrecords, subject to police inspection." Id. at 612.
 {¶ 22} In the instant case, Strongsville argues that the ordinances are limited in time, place, and scope, because Bonacci arrived at the premises during regular business hours and sought to review the motel guest register, which contained information related only to the motel guests and length of stay. This argument is without merit.
 {¶ 23} Merely because the execution of the warrantless search was conducted during regular business hours does not demonstrate that the ordinance itself is limited. In fact, S.C.O. 1454.02 does not indicate any specific time in which the inspection can be made. It merely states "at any time." This is not sufficiently limited to pass constitutional muster under Burger.
 {¶ 24} Moreover, S.C.O. 1454.02 is unconstitutional because it is unlimited in scope. The ordinance makes no reference to what may be investigated or examined. It merely provides that inspectors shall have the right to examine any motel "for the purpose of investigating and examining therein those conditions which are regulated by this chapter." The conditions regulated by Chapter 1454 range from the guest register to cleanliness of the units and their contents, drainage, weeds, building measurements, water, and garbage. It is permissible that, under the plain language of S.C.O. 1454.02, inspectors could request entry at "any time" to inspect the cleanliness of the units.
 {¶ 25} This court recognizes that the trial court looked only at the constitutionality of S.C.O. 1454.03 and 1454.13. However, applying theBurger test to S.C.O. 1454.03 yields the same result. S.C.O. 1454.03 authorizes the inspection of the guest register and merely provides that it "shall always be open for inspection." This language does not satisfy the time requirement of Burger. The trial court found it was limited to the "hours the motel is open." However, most motels, by their nature, are open 24 hours. S.C.O. 1454.03 is not time-limited as to satisfy Burger and provide a motel owner a "constitutionally adequate substitute for the warrant." Burger, supra at 703, quoting Donovan, supra at 600.
 {¶ 26} Furthermore, S.C.O. 1454.13 is unconstitutional because it incorporates a licensing scheme that is nonexistent under Chapter 1454.[2] S.C.O. 1454.13 provides that no person is permitted to occupy "any unit licensed hereunder * * *." However, Chapter 1454 contains no procedure for obtaining a license to operate a motel. There are ample references in various sections throughout Chapter 1454 that seemingly indicate that a motel owner or operator must be licensed by the City under this Chapter. See, also, S.C.O. 1454.16 ("The mayor may suspend or revoke any license issued under this chapter at any time * * *") and S.C.O. 1454.17 ("Any person denied a license under this chapter or whose license is suspended or revoked under this chapter * * *").
 {¶ 27} However, even if a City license was required to maintain and operate a motel, such a requirement would conflict with state law, and thus be invalid. In C.L. Maier Company v. Canton (1964), 94 Ohio L. Ab. 435, 201 N.E.2d 609, the court held that the City of Canton's ordinance requiring hotel owners to obtain a license from the City was in conflict with the general laws of the State of Ohio, to wit: R.C. 3731.03. "In determining whether an ordinance is in `conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." C.L. Maier, supra at 437, quotingStruthers v. Sokol (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus. In C.L. Maier, the court concluded:
"In the present case the State says a hotel may be conducted if itobtains a license from it, but the City says that same hotel cannot beconducted unless it receives a license from it, or vice versa. If theState has granted a permit or license to the hotel to operate, the Cityforbids or prohibits it to operate until it obtains a license from it, orvice versa. And if either the State or the City refuses to license (orrevokes the license) because the hotel has not met the requirements ofthe law or ordinance; and the other grants the license, there is aconflict and the hotel still cannot operate." C.L. Maier, supra at 437.
 {¶ 28} Therefore, we find that the ordinances under which appellants were convicted are unconstitutional because they fail to sufficiently limit the time, place, and scope of the administrative regulatory scheme to satisfy the mandates of Burger, supra.
 {¶ 29} Accordingly, the appellants first and second assignments of error are sustained. The remaining assignments of error are moot.
Judgments reversed and convictions vacated.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee the costs herein.
It is ordered that a special mandate be sent to the Berea Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J. Concurs; Dyke, P.J. Concurs in judgment only.
[1] Appellants Ashok Patel, Shirishbha Patel, and Simon Zariffe were fined $10 for each additional violation.
[2] We recognize that R.C. 3731.03(A) requires that every person in the business of conducting a hotel shall obtain a license and that no hotel shall be maintained or conducted without a license. However, the plain language of the above-referenced sections of the Strongsville ordinances indicates that the "license" is not the license issued under the Revised Code.